IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TRACI M. LEFEVER and<br>CHRISTOPHER KNUDSEN,<br><br>    Plaintiffs,<br><br>v.<br><br>A.H. HOFFMAN, INC., and JOHN<br>DOES 1-10,<br><br>    Defendants.<br>_____ | Case No. CV 04-311-S-LMB<br><br>ORDER |

Currently pending before the Court are Defendant's Motion for Summary Judgment (Docket No. 16) and Defendant's Motion to Strike Affidavit of Plaintiff Traci LeFever (Docket No. 24). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Order.

I.

BACKGROUND

On June 23, 2002, Plaintiff Traci LeFever's home was destroyed by a fire. *Defendant's Statement of Material Facts*, ¶ 15 (Docket No. 16, Att. 2). Fire officials concluded that the fire was caused by a cigarette extinguished in an outside planter filled with a soilless potting soil manufactured and distributed by Defendant A.H. Hoffman, Inc. *Id*. at ¶¶ 4, 25. Plaintiff Christopher Knudsen is LeFever's son. *Id*. at ¶ 2. Neither LeFever nor her son were home when the fire started. LeFever's insurance company, State Farm, paid to replace the home and compensated LeFever and her son for their personal property destroyed by the fire. *Id*. at ¶¶ 19-

ORDER -1-

20.

Plaintiffs filed a Complaint with this Court on June 19, 2004, alleging that Defendant was "negligent in failing to warn consumers about the flammability of [its] Potting Soil" and that Defendant breached an implied warranty of merchantability because the soil "was dangerous for foreseeable use." *Complaint*, ¶¶ 16, 20 (Docket No. 1).  Plaintiffs seek compensation for property damage, past lost wages and benefits, loss of consortium from mother to son, loss of consortium from son to mother, mental pain and suffering, and other economic and out-of-pocket losses. *Id*. at ¶¶ 18, 22.  On February 1, 2006, Defendant filed a Motion for Summary Judgment on both of Plaintiffs' claims.  (Docket No. 16).  Defendant also has moved to strike the Affidavit of Traci LeFever filed in opposition to Defendant's Motion for Summary Judgment.  *Motion to Strike* (Docket No. 24).

## II.

## DISCUSSION

**A.     Diversity Jurisdiction**

As an initial matter, the Court will address Defendant's claim that the Court lacks jurisdiction over this action.  *Defendant's Memorandum of Points and Authorities*, pp. 12-16 (Docket No. 16).  Plaintiffs brought this diversity action under 28 U.S.C. § 1332(a)(1) and therefore must demonstrate that the matter in controversy exceeds the sum of $75,000 and that all Defendants are diverse from all Plaintiffs.  Defendant argues only that Plaintiffs have not demonstrated that the matter in controversy exceeds $75,000.  Defendant relies principally on the fact that State Farm compensated LeFever and Knudsen for their losses and has not sought to be subrogated for any recovery for the loss of the residence and personal property.  Defendant claims that the value of the lost home and personal property therefore should be excluded from

the damage calculations.

Plaintiffs' insurance policy, however, allows State Farm to "require an assignment of rights of recovery for a loss to the extent that payment is made by [the insurance company]." *LeFever Affidavit*, Ex. B, p. 19, § 8 (Docket No. 22). There is no time limit assigned to this provision. Thus, although State Farm has not yet sought an assignment of rights, it is not precluded from seeking reimbursement for the amount in which it compensated Plaintiffs. *See, e.g., Dyet v. McKinley*, 139 Idaho 526, 531, 81 P.3d 1236, 1241 (2003) (explaining that whether or not the insurance company seeks recovery from the insured "as it is entitled under the contract is a contractual matter between" the insured and the company).

Because State Farm still could seek to recover for the benefits it paid Plaintiffs, the value of Plaintiffs' home, which exceeds $75,000, is properly included in the amount in controversy. *See* Idaho Code § 6-1606 (prohibiting double recoveries from collateral sources except "benefits paid which are *recoverable* under subrogation rights created . . . by contract") (emphasis added). *See also Dyet*, 139 Idaho at 531, 81 P.3d at 1241 (stating that "[f]or purposes of I.C. § 6-1606 the operative fact is that the amount is recoverable"). Accordingly, the amount in controversy is sufficient for this Court to exercise jurisdiction.[1]

**B.    Defendant's Motion to Strike**

Defendant has moved to strike the Affidavit of Traci LeFever in Response to Motion for Summary Judgment. (Docket No. 24). Defendant argues that the LeFever Affidavit is "premised solely upon multiple hearsay, conjecture, and speculation." *Id*. at p. 1.

---

[1] Because the value of the home, by itself, is sufficient to demonstrate that the amount in controversy exceeds $75,000, the Court will not consider Defendant's arguments that other amounts should be excluded from Plaintiffs' claimed damages (e.g., that there is no recovery for loss of consortium between a mother and son and that Plaintiffs cannot recover for pain and suffering). *See Defendant's Memorandum of Points and Authorities*, pp. 13-14 (Docket No. 16).

**ORDER -3-**

Affidavits in opposition to summary judgment must be made on personal knowledge and "set forth such facts as would be admissible in evidence." Fed. R. Civ. P. 56(e); *see also Hughes v. United States*, 953 F.2d 531, 543 (9th Cir. 1992). "[S]elf-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001).

1.   **Newspaper and Internet Articles**

LeFever's Affidavit includes in Exhibit A several "news reports of fires being started by people putting [cigarettes] out in potting soil." *LeFever Affidavit*, ¶ 3 (Docket No. 22). If offered to demonstrate that the fires discussed were caused by cigarettes in potting soil, these articles are inadmissible hearsay. *Larez v. City of Los Angeles*, 946 F.2d 630, 641-43 (9th Cir. 1991); *Atkins v. Fischer*, 232 F.R.D. 116, 132 (D.D.C. 2005) ("explaining that newspaper articles constitute inadmissible hearsay, and cannot be admitted into evidence to support the truth of the matter asserted"); Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

Plaintiffs argue that the newspaper articles are not hearsay because they are not submitted for the truth of the matter asserted, but rather "for the mere fact that such allegations by multiple fire departments and public officials have been made and that if the Defendant had acted reasonably, it would have been aware of the allegations and could have investigated and/or warned against the danger." *Response in Opposition to Motion to Strike Affidavit*, p. 1 (Docket No. 26). Essentially, Plaintiffs have submitted the articles to demonstrate that Defendant had notice of the potential for its product to cause a fire if used to extinguish a cigarette, and that potting soil had been used for the purpose of extinguishing cigarettes.

**ORDER -4-**

A court in Illinois rejected a similar argument in a products liability case because there was no evidence that the defendant's employees read newspaper and magazine articles explaining the effect of exposure to a component of defendant's product and, therefore, the articles did not establish that the defendant had notice of a problem with its product.  *Betts v. Manville Pers. Injury Settlement Trust*, 588 N.E.2d 1193, 1220 (Ill. App. Ct. 1992).  Similarly here, there is no evidence that Defendant read the articles submitted by Plaintiffs.  In fact, Guenter Burkhardt, Defendant's Chief Executive Officer, averred that during its 70 years in business Defendant has never received a complaint or had notice of any problems relating to a fire originating in the product at issue or in any other similar product.  *Burkhardt Affidavit*, p. 3, ¶ 13 (Docket No. 16, Att. 3).

In addition, most of the articles submitted by Plaintiffs were written in the year 2005 or later.[2]  The fire here occurred three years earlier, in June of 2002.  Thus, if the articles are offered for the purpose which Plaintiffs claim, e.g., notice, they could not as a matter of law demonstrate that Defendant should have known of a problem with cigarettes and flammability because the articles were not written and/or posted on the Internet until well after Defendant manufactured and sold the potting soil that Plaintiffs claim caused the fire at their home.

For this reason, the articles offered by Plaintiffs cannot demonstrate the purpose for which they have been offered, nor do they have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

---

[2] These articles include: (1) a July 20, 2005 newspaper article from the Mountain Home Newspaper in which the fire chief said that a fire at the Wickard home "appeared to have begun with a cigarette butt tossed into some potting soil on the home's rear deck"; (2) a May 2005 article on the Internet from the Office of the Idaho State Fire Marshal on "Potting Soil Fires," in which Deputy State Fire Marshal Richard Hahn notes that "[t]he 'old' soil in [planter] pots is often used as an ashtray"; and (3) an Anchorage Fire Department Press Release from June 13, 2005, discussing three fires that occurred that weekend from cigarettes "carelessly discarded" in flower pots.  *LeFever Affidavit*, Ex. A (Docket No. 22).

**ORDER -5-**

without the evidence." Fed. R. Evid. 401; *see also Finchum v. Ford Motor Co.*, 57 F.3d 526, 531 (7th Cir. 1995) (affirming the district court's exclusion of evidence of the defendant's alternative seat design in 1992 for installation in vans customized for resale in 1993 because this information could not demonstrate the state of the art technology available when the seats in the plaintiff's car were designed and therefore was not relevant).

In addition to the articles that were published and circulated three years after Plaintiffs used Defendant's potting soil, Plaintiffs submitted two articles that do not contain any information on when they were written or posted to the Internet.[3] These articles also cannot demonstrate or establish that Defendant should have known of any problems because there is no indication this information was available to Defendant when it manufactured and/or sold the product at issue in this action.[4]

Further, the Court has concerns about the accuracy and reliability of the information contained in all of the articles. As Defendant correctly notes, nothing in the record establishes that these articles are "truthful, accurate, reliable and sufficient to induce a duty to warn." *Defendant's Reply to Plaintiffs' Opposition to Motion to Strike Affidavit*, p. 4 (Docket No. 27).

Moreover, there is no information on what kind of potting soil products are the subject of the articles. *See, e.g.*, *Larez*, 946 F.2d at 644 (noting that "[c]ourts may well question whether an out-of-court statement, merely because it appears in newsprint, is sufficiently reliable"); *Capano*

---

[3] At the summary judgment hearing, counsel for Plaintiffs noted LeFever's deposition testimony, in which she states she has "read up" on potting soil "on the Internet." *Anderson Affidavit*, Ex. A, p. 33 (Docket No. 16, Att. 6). Again, however, there is no indication about when LeFever searched for this informaiotn on the Internet or where on the Internet she found the information.

[4] There are two undated articles. *LeFever Affidavit*, Ex. A (Docket No. 22). The first is from the City of Langley website. It is an article on "Fire Prevention, Potting Soil Fires and Your Safety," explaining that "fires can start when you use the old potting soil as an ashtray" and advising that individuals not "use old planter pots that contain potting soil as an ashtray." *Id.* The second article is from the site www.springsgov.com, stating that "fires can start when you use . . . old potting soil as an ashtray." *Id.*

**ORDER -6-**

*v. State*, 781 A.2d 556, 640 (Del. 2001) (explaining that "[s]tatements in newspaper articles are hearsay, and in most cases their accuracy cannot be assumed"). For all these reasons, paragraph three and Exhibit A of LeFever's Affidavit are stricken from the record.

### 2.    Statements of Legal Conclusions

Defendant also objects to other parts of LeFever's Affidavit. For instance, LeFever states that "[c]igarette smokers regularly use planters in front of buildings to extinguish cigarettes." *LeFever Affidavit*, ¶ 2 (Docket No. 22). To the extent this statement is based on LeFever's own observations, it is based on personal knowledge and can be considered. The same is true with respect to LeFever's claim that "[d]irt is a common material for the extinguishment of cigarettes." *Id.* at ¶ 5. However, LeFever's claim that the use of dirt to extinguish a cigarette "is reasonable and prudent," is a legal opinion and a disputed point of law in this action. Thus, this statement will be disregarded. *See Am. Civil Liberties Union of Nevada v. City of Las Vegas*, 13 F. Supp. 2d 1064, 1071 (D. Nev. 1998).

### 3.    Fire Investigation Reports

Defendant claims the reports of the Mountain Home Fire Department and State Fire Marshal, which support Plaintiffs' claim that the fire started in the potting soil, are inadmissible hearsay. However, "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . matters observed pursuant to duty imposed by law as to which matters there was a duty to report, . . . [or] factual findings resulting from an investigation made pursuant to authority granted by law," are not excluded by the hearsay rule "unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R. Evid. 803(8). Thus, the reports at issue in the present action qualify as exceptions to the hearsay rule and will be considered by the Court.

C.     **Defendant's Motion for Summary Judgment**

1.     **Standards of Law**

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under Rule 56, summary judgment is required if the nonmoving party fails to make a showing sufficient to establish the existence of an element that is essential to the party's case and upon which the party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the nonmoving party fails to make such a showing on any essential element of the party's case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323. *See also* Fed. R. Civ. P. 56(e).[5] In order to determine whether Defendant' motion should be denied, it is necessary to ensure that Plaintiffs have established each and every element of their *prima facie* case.

According to Rule 56, an issue must be both "material" and "genuine" to preclude entry of summary judgment. An issue is "material" if it affects the outcome of the litigation. An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial," *Hahn v.*

---

[5] Rule 56(e) states that, in responding to a motion for summary judgment, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R. Civ. P. 56(e).

**ORDER -8-**

*Sargent*, 523 F.2d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)), or when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Ninth Circuit Court of Appeals cases are in accord. *See, e.g., British Motor Car Distribs., Ltd. v. S.F. Auto. Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

In ruling on summary judgment motions, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Moreover, all inferences must be drawn in the light most favorable to the nonmoving party. *Id.* at 631. That is, "if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *Id.*

In order to withstand a motion for summary judgment, a nonmoving party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distribs.*, 882 F.2d at 374 (citation omitted). Moreover, where the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must "produce 'specific facts showing that there remains a genuine issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (citing *Ruffin v. County of L.A.*, 607 F.2d 1276, 1280 (9th Cir. 1979)).

**ORDER -9-**

In recent years the Supreme Court, "by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).  Therefore, "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment."  *Id*.  A material fact is

> one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit.  The materiality of a fact is thus determined by the *substantive law* governing the claim or defense.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)) (emphasis added).

### 2. Negligence - Failure to Warn

Plaintiffs claim that Defendant was "negligent in failing to warn consumers about the flammability of [its] Potting Soil."  *Complaint*, ¶ 16 (Docket No. 1).  A manufacturer, such as Defendant, has a duty to "exercise reasonable care to warn [customers] of . . . facts which make [its] product likely to be dangerous" if the manufacturer "knows or has reason to know that the product is likely to be unsafe when used for the purpose for which it is supplied."[6]  *Robinson v. Williamson Idaho Equip. Co*., 94 Idaho 819, 825, 498 P.2d 1292, 1298 (1973).  *See also* Restatement (Second) of Torts § 388 (providing that a supplier of a product who "knows or has reason to know that the [product] is or is likely to be dangerous *for the use for which it is supplied*," "has no reason to believe that those for whose use the [product] is supplied will

---

[6] The prima facie case in a products liability action based on negligence consists of (1) an injury, (2) that was proximately caused by a defect (here, the failure to warn), (3) that existed at the time the product left the control of the manufacturer.  *Corbridge v. Clark Equip. Co*., 112 Idaho 85, 87, 730 P.2d 1005, 1007 (1986).  The only disputed element in the present case is the second element, based on an alleged failure to warn.

**ORDER -10-**

realize its dangerous condition," and "fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous," will be subject to liability) (emphasis added).[7]

The duty to warn "extends to risks of danger which arise during the known or foreseeable use of the product." *Robinson*, 94 Idaho at 826-27, 498 P.2d at 1299-1300. *See also Puckett v. Oakfabco, Inc.*, 132 Idaho 816, 979 P.2d 1174 (1999) (explaining that a product is defective if "the defendant has reason to anticipate that danger may *result from a particular use of his product* and fails to give adequate warnings of such danger") (citation and internal quotation mark omitted).

As support for their negligent failure to warn argument, Plaintiffs claim that "[i]t is unlikely that any juror could go anywhere downtown and not find cigarettes in a vast majority of the large outdoor containers surrounding Boise office buildings." *Response to Motion for Summary Judgment*, p. 1 (Docket No. 20). Plaintiffs also rely on LeFever's statement that "[c]igarette smokers regularly use planters in front of buildings to extinguish cigarettes," and "[d]irt is a common material for the extinguishment of cigarettes." *LeFever Affidavit*, ¶¶ 2, 5 (Docket No. 22). Plaintiffs claim that these facts demonstrate and establish that Defendant "should have known that it was reasonably foreseeable when its product was used to fill large outdoor containers that someone would put a cigarette out in its product." *Response to Motion for Summary Judgment*, p. 2 (Docket No. 20).

There are three problems with Plaintiffs' response. First, several of Plaintiffs' representations are not contained in an affidavit, but instead are proposed in a brief. "When a

---

[7] The Idaho Supreme Court has explained that "Section 388 controls in the case of allegations of negligent failure to warn." *Sliman v. Aluminum Co. of Am.*, 112 Idaho 277, 281 n.2, 731 P.2d 1267, 1271 n.2 (1986).

**ORDER -11-**

motion for summary judgment is made and supported as provided in [Rule 56], an adverse party *may not rest upon the mere allegations or denials of the adverse party's pleading*, but the adverse party's response, *by affidavits or as otherwise provided* in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphases added).  Thus, allegations not complying with the rule cannot support Plaintiffs' argument that genuine issues of material fact exist.

Second, the fact that cigarette butts may be present or deposited in large containers outside of downtown Boise office buildings does not demonstrate or establish that Defendant, a Delaware Corporation with its principal place of business in Pennsylvania, would know of this circumstance or have any reason to warn against it.

Third, the mere fact that Plaintiff LeFever has personally observed cigarette smokers using planters in front of buildings and/or dirt to extinguish cigarettes, does not demonstrate how Defendant should have known of a danger connected to the use of its product. "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Instead, "[t]here must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion." *Id.* (citation and internal quotation marks omitted).

Although Plaintiffs repeatedly assert that Defendant should know that people put cigarettes out in planters, they have provided no evidence indicating how Defendant would have known this before it manufactured and sold the potting soil used by Plaintiff LeFever.  *See Response to Motion for Summary Judgment*, pp. 1-3 (Docket No. 20).  Further there is nothing in the record to establish specifically what type of soil or material is placed in the referenced

**ORDER -12-**

planters.

In contrast, Defendant provided affidavits indicating that it did not know or have reason to know that its product was unsafe, that its product was supplied only for the purpose of providing a mixture of organic materials in which to grow plants, flowers, and comparable materials, and that when its potting soil is used for this purpose and watered in a manner consistent with its directions the product is not flammable. *See Burkhardt Affidavit*, p. 3, ¶ 13 (Docket No. 16, Att. 3); *Schaefer Affidavit*, Ex. A (Expert Report), pp. 3-4 (Docket No. 18). In addition, "[t]here are no national standards or codes that relate to the flammability of potting soil as there is not a contemplated or recognized fire danger or risk in the product," nor are there "recognized industry standards, customs or policies that would require or suggest the necessity of a warning label for risk of fire in potting soil." *Schaefer Affidavit*, Ex. A, p. 4 (Docket No. 18). Finally, Defendant's expert has opined that "[p]otting soil itself creates no hazard of direct ignition," *id.* at Ex. A, p. 5, "[t]he hazard of fire is not created by the potting soil," *id.* at Ex. A, p. 4, and "[p]otting soil was never intended to be used as a cigarette extinguishing agent," *id.* at Ex. A, p. 5. Nothing in the record contradicts these statements.

Significant to the notice issue, Defendant's Chief Executive Officer, Guenter Burkhardt, averred that in 70 years of business "this is the first and only occasion that any claim, complaint or litigation has ever been made or filed relating to a fire that allegedly originated in this or any other similar product of the company." *Burkhardt Affidavit.* ¶ 13 (Docket No. 16, Att. 3). Mr. Burkhardt also testified that Defendant "never contemplated nor envisioned that [its] product would be placed in an outdoor container, allowed to dry out completely and then be used as a cigarette receptacle." *Id.* at ¶ 12.

**ORDER -13-**

A question of foreseeability, such as the question of whether Defendant here had reason to believe that people would use its potting soil to extinguish cigarettes, is generally a question of fact. *Mico Mobile Sales & Leasing, Inc. v. Skyline Corp.*, 97 Idaho 408, 412, 546 P.2d 54, 58 (1975). However, if the facts presented by the parties and established by the evidence can lead to only one reasonable conclusion, the trial court may rule upon the foreseeability issue as a matter of law. *Id.* While the Court may not weigh the evidence, or make credibility determinations, summary judgment under Rule 56 is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Here, because Plaintiffs, as the non-moving party, have failed to make such a showing on an essential element, i.e, Defendant's reason to know that its product is likely to be unsafe when used for the purpose for which it is supplied, "there can be no 'genuine issue of material fact.'" *Id.* at 323. A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* Accordingly, there is no genuine issue of material fact sufficient to preclude summary judgment in favor of Defendant on the negligent failure to warn claim.

### 3. Implied Warranty of Merchantability

Plaintiffs claim that Defendant breached the implied warranty of merchantability because the soil "was dangerous for foreseeable use." *Complaint*, ¶ 20 (Docket No. 1). To establish a breach of the implied warranty of merchantability, "the product must be unfit for the ordinary use for which it was manufactured." *Robinson*, 94 Idaho at 828, 498 P.2d at 1301. *See also Dickerson v. Mountain View Equip. Co.*, 109 Idaho 711, 714, 710 P.2d 621, 624 (Ct.App. 1985).

**ORDER -14-**

Defendant has provided the Affidavit of its Chief Executive Officer which states that its potting soil "is manufactured for the purpose of providing a medium that will promote and sustain plant propagation and growth in both indoor and outdoor planters/containers or in outdoor garden beds." *Burkhardt Affidavit*, p. 3 (Docket No. 16, Att. 3).  Similarly, Defendant's expert opined that "[p]otting soil was never intended to be used as a cigarette extinguishing agent." *Schaefer Affidavit*, Ex. A, p. 5 (Docket No. 18).  That is the only evidence in the case on the issue of intended use of potting soil.

In response to this evidence and Defendant's Motion for Summary Judgment, Plaintiffs argue only that there is a question of material fact as to "whether an ordinary purpose of filling large planting container[s] includes the foreseeable use of the extinguishment [of] cigarettes in those containers." *Response to Motion for Summary Judgment*, p. 4 (Docket No. 20).  Plaintiffs, however, have provided no admissible evidence whatsoever that one of the "ordinary uses" of potting soil is the extinguishment of cigarettes.  Instead, Plaintiffs merely argue that people use large planting containers to extinguish cigarettes.  *Id.*  This, by itself, does not establish that an "ordinary" use of potting soil is the extinguishment of cigarettes.

Accordingly, because Plaintiffs have presented no evidence to support an essential element of their case, *see Celotex*, 477 U.S. at 322, granting summary judgment in favor of Defendant on Plaintiffs' implied warranty of merchantability claim is required.

**ORDER -15-**

## III.

## ORDER

For the reasons explained above, IT IS HEREBY ORDERED:

1.	Defendant's Motion to Strike (Docket No. 24) is GRANTED, in part, and DENIED, in part, as set forth above.

2.	Defendant's Motion for Summary Judgment (Docket No. 16) is GRANTED, and this action DISMISSED in its entirety.

DATED: **April 26, 2006**.

_____
Honorable Larry M. Boyle
Chief U. S. Magistrate Judge